418 So.2d 1311 (1982)
RELIABLE CREDIT CORPORATION
v.
Nathan SMITH and Geraldine Smith.
No. 81-C-3265.
Supreme Court of Louisiana.
June 21, 1982.
Rehearing Denied September 17, 1982.[*]
*1312 Weldon J. Hill, II, Baton Rouge, for applicant.
Richard W. Sroges, Michael O. Hesse, Baton Rouge, for respondents.
BLANCHE, Justice.
This case involves a consumer's right to recover civil penalties from an extender of credit because of a violation of the Louisiana Consumer Credit Law. Defendants, Nathan and Geraldine Smith, obtained a loan from Reliable Credit Corporation in September 1978 to purchase stereo equipment. The total amount of the secured loan was $4400, consisting of $3335.79 principal and $1104.21 in finance charges. Under *1313 the terms of this precomputed consumer credit transaction, the Smiths were required to make 24 consecutive monthly payments of $185, due on the 5th day of each month. The first installment was payable on November 5, 1978.
No payments were made until December 7, 1978 when Nathan Smith went to Reliable's office and tendered $185 cash to George Vidrine, a representative of Reliable. Because both the November and December installments were due and outstanding, Vidrine imposed a $5 delinquency fee for the November payment and a $46 deferral charge for the December installment.
The Smiths continued to fall behind in their installments, making only sporadic payments. In September 1979, Reliable decided to accelerate the note and sued the Smiths for the unpaid balance, less a rebate for the amount of unearned interest. In their amended answer, Nathan and Geraldine Smith claim that Reliable had violated the Louisiana Consumer Credit Law (LCCL). Defendants also gave written notice by certified mail of these alleged violations. Included in this written notice, which was sent to Reliable and its agent for service of process, was a claim that the December 7, 1978 deferral charge was improperly assessed because the December 5 installment was not 10 days delinquent and the Smiths had not agreed, in writing, to the deferral charge.
Nearly two months after receiving defendants' written notice of the improperly imposed deferral charge, Reliable attempted to correct its error. The $5 delinquency fee charged on December 7, 1978 was refunded and the $46 deferral charge which had been applied to the December 5, 1978 installment was switched to apply to the initial installment due on November 5,1978.
The trial court rendered judgment in favor of Reliable in the amount of $3225.58, the unpaid balance on the Smiths' loan at the time suit was filed. However, the trial judge concluded that Reliable had committed a violation, not in good faith, of the LCCL in wrongfully imposing a deferral charge on the December 5,1978 installment and permitted defendants to set off the statutorily imposed civil penalties[1] against the amount awarded Reliable on the loan. The civil penalties against plaintiff totalled $3050.61 and consisted of the finance charges actually paid by the Smiths ($717.79), a penalty of three times those charges ($2153.37) and attorney's fees in the amount of 25% of the finance charges ($179.45). As a result of this set off, the judgment in favor of Reliable was reduced to $174.97.
The court of appeal affirmed the holding of the trial court, La.App., 406 So.2d 231, but amended the award. The appellate court agreed that the Smiths were entitled to a refund of the finance charges actually paid. However, the court concluded that the trial judge incorrectly computed the amount of treble damages and attorney's fees authorized under the LCCL. Contrary to the trial court, the appellate court reasoned that the penalty of three times the loan finance charge referred to the original charge due under the credit agreement and not those charges actually paid by the consumer. Because the loan finance charge originally agreed to was $1104.21, the court of appeal held that defendants were entitled to recover three times that amount, $3312.63, and not $2153.37 as concluded by the trial judge.
Further, the appellate court was of the opinion that the $179.45 award for attorney's fees was inadequate because it was not tailored to the amount of time reasonably expended by the Smiths' attorney. Accordingly, the court raised the amount of attorney's fees to $1000. These two increases in civil penalties raised the Smiths' recovery to $5030.42. After setting off this amount against Reliable's $3225.58 award for the unpaid balance on the loan, judgment was entered in favor of Nathan and Geraldine Smith in the amount of $1804.84.
We granted writs to determine whether the deferral charge was wrongly imposed and, if so, to review the award of civil *1314 penalties for a violation of the Louisiana Consumer Credit Law. Both of these issues present questions that have not been subject to prior judicial interpretation.
The Louisiana Consumer Credit Law, R.S. 9:3510, et seq., was enacted to protect unwary consumers from the harsh impact of credit abuses by providing a comprehensive scheme of rate regulation. By regulating those finance charges that may be imposed in a credit transaction, it is clear that the legislature intended not only to deter unscrupulous credit practices, but also to afford the injured consumer with an affirmative vindication of his rights.[2] See "Symposium: Louisiana's New Consumer Protection Legislation". 34 La. L. Rev. 597 (1974-75).
Those instances in which deferral charges may be properly assessed by an extender of credit in a precomputed consumer credit transaction are included in the provisions of the Louisiana Consumer Credit Law. Should the parties to the credit transaction agree, either before or after default and in writing, to defer all or part of an unpaid installment, the extender of credit may impose and collect a charge from the consumer. R.S. 9:3526(A). The parties may also agree in writing at the time the transaction is entered into that the extender of credit may unilaterally impose a deferral charge on an installment not paid within ten days of its due date. R.S. 9:3526(B).
In the present case, the only written agreement between Reliable and the Smiths was found in the loan contract. This provision paralleled R.S. 9:3526(B), and authorized Reliable to unilaterally impose a deferral charge on any installment not paid within ten days of its due date. When Nathan Smith paid the $5 delinquency and $46 deferral charges on December 7, 1978, both the November and December installments were due and outstanding. Because of the clause in the loan contract, Reliable could have unilaterally imposed a deferral charge on the November installment which was 32 days delinquent. However, the credit corporation chose to apply the $5 delinquent fee to the November payment and the $46 deferral charge to the December installment.[3] Since the December installment was not ten days past due at the time the charge was imposed, a written agreement was required, R.S. 9:3526(A). Because no written authorization was given before or after default, the deferral charge was improperly imposed and a violation resulted.
Reliable subsequently attempted to correct its error by refunding the $5 delinquent fee and switching the deferral charge from the December to the November installment. We agree with the lower courts that this later effort by Reliable to correct its unauthorized action was pertinent to the determination of the quality of the violation (good faith vs. bad faith) and not to the question of whether a violation occurred. As noted by the trial judge:
... To hold that a creditor could thereafter still make [untimely] corrective additions and credits to the payment card in order to achieve compliance with the act would seem to render the provisions of the act itself meaningless and unenforceable.
The assessment of civil penalties against Reliable for wrongfully imposing the December 7 deferral charge was based upon the trial court's finding that the violation was not caused by a good faith error. The pertinent penalty provision, R.S. 9:3552(A)(1), provides:
A. Violations discovered as a result of written consumer complaint

*1315 (1) Intentional violations or violations not caused by good faith errors.
(a) If the court finds that the extender of credit has intentionally or as a result of error not in good faith violated the provisions of this chapter, the consumer is entitled to a refund of all loan finance charges or credit service charges and has the right to recover three times the amount of such loan finance charge or credit service charge together with reasonable attorney's fees. The right to recover the civil penalty under this subsection accrues only after
(i) written notice is given to the extender of credit by certified mail addressed to the extender of credit's place of business in which the consumer credit transaction arose;
(ii) a copy of such notice is mailed to the extender of credit's agent for service of process; and
(iii) thirty days have elapsed since receipt of such notice by the extender of credit and the violation has not been corrected.
(b) Except as otherwise provided herein, if the notices provided for in Subsection A(1)(a) of this section have been given by the consumer, the following acts by the extender of credit shall be presumed to be an intentional violation or a violation not resulting from good faith error:
(i) Failure to return or give credit for an overcharge in the loan finance charge or credit service charge or, failure to return a deficiency in the rebate within the time period set forth in Subsection A(1)(a)(iii) of this section when such overcharge or deficiency exceeds the greater of (1) ten percent of such loan finance charge, credit service charge or rebate; or (2) fifteen dollars.
Initially, we note that defendants gave written notice by certified mail of the claimed violation to Reliable and its agent for service of process. Once Reliable received the complaint, it had 30 days to return or give credit for the $46 overcharge in the loan finance charge.[4] Both lower courts erroneously held that, since suit had been filed, the extender of credit could not thereafter return improperly collected charges. This restriction is not contained in the provisions of the LCCL. Further, because the Smiths' notice of a complaint was mailed after suit had been filed, the lower courts' mistaken conclusion would preclude the statutory authorization for a correction before "30 days have elapsed since receipt of such notice". R.S. 9:3552(A)(1)(a)(iii).
However, Reliable did not return or give credit for the deferral charge until nearly 2 months elapsed since it received the Smiths' written notice. Because Reliable did not take corrective action within the 30 day period, the violation was "presumed" to be intentional, or not resulting in good faith. R.S. 9:3552(A)(1)(b). Reliable urges that an audit by the Department of Financial Institutions shortly before this suit was filed failed to uncover any irregular financial practices on the part of the credit corporation.[5] However, the individual who examined Reliable's accounts clearly testified that if no complaint was made concerning the imposition of a finance charge he would merely presume that an agreement had been reached.[6] As a result, the auditor could not determine by his examination of Reliable's records whether the credit corporation attempted to obtain the consumer's consent to a deferral charge and, if so, *1316 whether the agreement was "in writing", as required by the LCCL. Further, Reliable's financial manager testified that corrective action was not promptly taken because "we had to look up the law and read it." We find these explanations totally inadequate to overcome the rebuttable presumption[7] established by Reliable's failure to timely correct the overcharge.
We also agree with the court of appeal's conclusion that the trial judge's factual determination of a "not in good faith" violation was amply supported by the evidence. George Vidrine, who handled the Smiths' loan, had been Reliable's financial manager for 2 years and had been involved in the financial business for about 14 years. The provisions of the LCCL became effective in January 1973, nearly 6 years before the overcharge in question was imposed. Reliable had employed an attorney to collect the unpaid balance on the loan and was put on notice of a claimed violation by defendant's amended answer. Finally, it was inexcusable to take nearly two months after receiving the Smith's complaint to "look up the law" and take proper steps to correct the unauthorized charge. It is overwhelmingly apparent that the factual findings of the trial court were not clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978). Accordingly, we conclude that the credit corporation's violation was of the quality that required the imposition of civil penalties.
Though the trial and appellate courts correctly held that Reliable's wrongful conduct was not in good faith, their holdings differed concerning the amount of civil penalties the Smiths were entitled to recover. The applicable penalty provision of the LCCL provides that the consumer is entitled to receive a "refund of all loan finance charges", "three times the amount of such loan finance charge" and "reasonable attorney fees." R.S. 9:3552(A)(1). In interpreting this language, both lower courts held that because the word "refund" was used by the legislature, the Smiths were implicitly entitled to recover those charges actually paid. Accordingly, the trial and appellate courts properly awarded defendants $717.99 under this portion of the penalty statute.
However, the courts differed in their computation of "three times the amount of such loan finance charge" and "reasonable attorney fees." The trial court reasoned that the Smiths were entitled to recover three times the amount of finance charges actually paid, while the appellate court was of the opinion that treble damages should have been based on the loan charges agreed to at the time the parties entered the loan transaction. We conclude that the wording of this portion of the statute gives greater support to the trial court's interpretation of the treble damages which a consumer may recover.[8] The language clearly states that a violator not in good faith is subject to a penalty of three times such loan finance charge. Though the term "loan finance charge" is defined as including all charges payable for the extension of credit, it is our opinion that the legislature, by using the word "such", manifested its desire to base the treble damages on the loan charges previously indicated. Because the before mentioned penalty referred to a "refund", the triple penalty should also be based on the charges actually paid by the consumer. Accordingly, the trial court's award of $2153.37 as treble damages was correct and should have been affirmed.
An award of attorney's fees for a violation of the LCCL must be measured by the time reasonably expended by the consumer's attorney and not by the amount of *1317 recovery. R.S. 9:3552(G). The trial court limited this amount to 25% of the refunded loan charges$179.45. The court of appeal increased this award to $1000, reasoning that the trial court failed to tailor attorney's fees to the effort expended by the Smiths' attorney. We agree with the appellate court that the amount of preparation by defendants' counsel, the complexity of the legal issues, and the degree of counsel's expertise required an increase in the trial court's award of attorney's fees. Based on the amount of work required in the instant case, we find the appellate court's award of $1000 appropriate.
As a result of Reliable Credit Corporation's violation of the Louisiana Consumer Credit Law, defendants, the Smiths, are entitled to receive civil penalties totalling $3871.16. However, because Reliable is entitled to recover $3225.58 on the unpaid balance of the loan, defendants' award must be set off by this amount.
We realize that the penalties imposed in the instant case are harsh. However, the legislatively mandated sanctions for an intentional or not in good faith violation do not provide for judicial discretion. Apparently, the state legislature was of the opinion that the effectiveness of the LCCL, like other regulatory legislation, hinges on the character of its enforcement provisions. See 34 La. L. Rev. 597, supra.
Accordingly, the holding of the court of appeal is amended by reducing the judgment in favor of Nathan and Geraldine Smith against Reliable Credit Corporation to $645.58, with legal interest from date of judicial demand, and for all costs of these proceedings.
AFFIRMED AND AMENDED.
NOTES
[*] Dennis, J. would grant a rehearing.
[1] See R.S. 9:3552(A)(1), infra.
[2] Relief for the debtor is also found in the Federal Consumer Protection Law (Truth in Lending). The basic difference between the federal and state laws is that the Truth in Lending is a disclosure law whereas the LCCL governs the essentials of the transaction itself. See Consumer Protection in Practice: Securing Debtor's Rights", 23 La. Bar Journal 151 (1975-76).
[3] It would have been improper for Reliable to charge both the $5 delinquency charge and $46 deferral charge to the November installment. R.S. 9:3525(B) provides in pertinent part: "No such delinquency charge may be collected if the installment has been deferred and a deferral charge has been paid or incurred, provided that the deferred payment is paid within ten days of its deferred date."
[4] A "loan finance charge" includes all charges payable by the consumer as an incident to the extension of credit. R.S. 9:3516(20) (now 21). We note that when the LCCL was originally adopted, deferral charges were expressly excluded from the definition of loan finance charges. However, Act 761, Sec. 1 of 1978, deleted deferral charges from this exception.
[5] R.S. 9:3554(A)(2) provides that the Commissioner of Financial Institutions has the power to counsel persons regarding their rights/duties under the LCCL.
[6] Joseph Haydel, an auditor for the Department of Financial Institutions, testified that, "As an examiner, if I would look at the card on that date or any other later date, I would have to say to myself since it is there the customer didn't pay it, there was no complaint made, apparently there was an agreement between the two to defer the payment."
[7] R.S. 9:3552(A)(2)(a) provides that a good faith violator may be required to correct its error without paying civil penalties as long as the violation is correct within 30 days of the consumer's complaint and the extender has given proper notice of multiple violations. Thus, had Reliable established a good faith violation it may have been shielded from civil penalties even though it failed to respond within 30 days because notice of multiple violations do not appear to be at issue.
[8] The court of appeal decision stated that "delinquency and deferral charges are not included in the loan finance charges." This statement is clearly wrong. See footnote 4.